**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LAVELL REDMOND,

Plaintiff,

v.

FOX TELEVISION STATIONS, LLC, and FOX CORPORATION,

Defendants.

Civil No. 1:24-cv-03392

Hon. Thomas M. Durkin

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Fox Television Stations, LLC, and Fox Corporation respectfully submit this Memorandum in support of their Motion to Dismiss Plaintiff's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

In September 2021, newly elected Village of Dolton Mayor Tiffany Henyard hired Plaintiff Lavell Redmond as a village code enforcement officer. A reporter for Chicago television station Fox 32 WFLD ("Fox 32")[1] investigating complaints against Henyard by village trustees discovered that Redmond was a registered child sex offender who had served 24 years in prison for taking part in the brutal rape and beating of two teenage girls in 1991. Fox 32 ran a series of stories in 2021 and 2022, which led to Redmond being charged with violating sex-offender reporting requirements and eventually losing his job as a code enforcement officer. Since then, news stories about scandals in Henyard's mayoral administration in 2023 and 2024 have twice referenced Redmond's hiring and firing.

[1] Fox 32 is a television station owned by Fox Television Stations, LLC, which is in turn a subsidiary of its ultimate parent, Fox Corporation. Except for the January 5, 2024, story on FoxNews.com, all the allegedly defamatory publications were made by Fox 32.

Nearly two-and-a-half years after Fox 32 first broke the story about Redmond's hiring, and a year and a half after Redmond was terminated, Redmond now sues for defamation and false light publication. Redmond admits that he was convicted of aggravated sexual assault and does not and cannot deny the horrid details of that crime that Fox 32 reported alongside the alleged inaccuracies. Nor does he deny that he was hired by Henyard into a position of authority and given a badge and a village vehicle to investigate potential code violations. What Redmond does allege, however, is that Fox 32 mischaracterized his job responsibilities, specifically that he had the authority as a code enforcement officer (or building inspector) to enter residents' homes to check code compliance.

Redmond's claims fail for three reasons. *First*, his claims are time-barred under Illinois' one-year statute of limitation for defamation and false light claims because the alleged statements were first published in October 2021. Subsequent references and links to those statements do not constitute "republication" under Illinois' single-publication rule. *Second*, the statements are not actionable because Redmond does not and cannot allege that the "gist" of the statements is false, even if certain small details are allegedly inaccurate. *Third*, because Redmond was a public official as a code enforcement officer, the alleged statements are constitutionally privileged unless Redmond can show that the statements were made with "actual malice"—that is, with knowledge of their falsity or reckless disregard for their truth. And Redmond's conclusory allegations of "actual malice" are insufficient to state a plausible claim for relief.

Accordingly, this Court should dismiss Redmond's Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. And because Redmond cannot cure these defects by amending his Complaint, this Court should dismiss his claims with prejudice.[2]

[2] *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile").

## RELEVANT FACTUAL ALLEGATIONS[3]

In 1991, Redmond was convicted of aggravated sexual assault. (Compl. ¶ 7.) He served 24 years in prison. (Compl. ¶ 7.) In 2020, he met Tiffany Henyard and began working as a security volunteer for Henyard's campaign for Village of Dolton Mayor. (Compl. ¶¶ 8, 9.) In September 2021, after Henyard won the election, she hired Redmond as a code enforcement officer. (Compl. ¶ 11.) As a code enforcement officer, Redmond patrolled the village in a village vehicle looking for potential violations of building and land codes but allegedly was not responsible for entering residents' homes and did not do so. (Compl. ¶¶ 12–13.)

As part of its reporting on controversy surrounding Henyard's actions as mayor, Fox 32 discovered that Redmond was a registered sex offender and uncovered the details of his 1991 conviction. (Compl. ¶ 15 & Ex. A at 12–13.[4]) On October 21, 2021, Fox 32 published a written story and a video about Redmond working for the Village of Dolton. (Compl. ¶¶ 14–16 & Ex. A at 12.[5]) The story explained Redmond's past, including that he had been convicted of aggravated sexual assault for the brutal gang rape and beating of two young teenage girls. (Ex. A at 12–13.) The article later stated that, as a code enforcement officer, Redmond "goes into Dolton homes and businesses to inspect them and make sure they are up to code." (Compl. ¶ 15 & Ex. A at 12.) The story also reported that "trustees in Dolton are demanding that the mayor explain how and why she hired Redmond into a job that puts him in constant contact with the public" and that Henyard's office was investigating the hire. (Ex. A at 13.) On October 27, 2021, Fox 32 published a second written story on its webpage, reporting that

---

[3] The facts recited here are taken from Redmond's Complaint and accompanying exhibits. *See* *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also* *Burlet v. Baldwin*, 452 F. Supp. 3d 801, 812 (N.D. Ill. 2020). These facts are assumed true only for purposes of this Motion to Dismiss. Because it is Redmond's burden to plead the falsity of any allegedly defamatory statements, *see* *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009), the defendants include additional details from the publications attached to the Complaint that Redmond does *not* allege are false, to provide indisputably true context for the allegedly inaccurate details regarding Redmond's job description and responsibilities.

[4] Citations to "Ex. A at __" refer to the "Group Exhibit A" attached to Redmond's Complaint, and page numbers refer to the pagination of ECF No. 1-3.

[5] Available at https://www.fox32chicago.com/news/dolton-mayor-under-fire-for-hiring-registered-child-sex-offender-to-inspect-homes.

Redmond was now facing charges for violating his sex offender registration requirements and generally repeating the statements in the October 21 story. (Compl. ¶ 17 & Ex. A at 15.[6])

On November 2, 2021, Redmond was arrested and charged for failing to report a change of employer and providing false information when registering as a sex offender. (Compl. ¶ 19.) Fox 32 published another written story and video on its webpage, stating that "Redmond was charged after our first story for violating the reporting requirements of the sex offender registry." (Compl. ¶ 18.[7]) The November 2 story and video also included footage of Redmond with Henyard interacting with children and wearing a badge at his waist. (Ex. A at 19.)

On June 29, 2022, Fox 32 published another story on its website regarding efforts to recall Henyard, which referenced in passing the controversy regarding Redmond's hiring. (Compl. ¶ 22 & Ex. A at 21.[8]) That story stated that "[t]he trustees accused Henyard of corruption, and hiring at least one registered sex offender," and included a link to the first October 21, 2021, article. (Compl. ¶ 22.) On August 3, 2022, the Village of Dolton terminated Redmond's employment as a code enforcement officer. (Compl. ¶ 23.)

On May 31, 2023, Fox 32 published another written story on corruption in Henyard's administration. (Compl. ¶ 26.[9]) That article made passing reference to Henyard's hiring of Redmond, among numerous other scandals, stating that "Henyard later made international news after hiring and then firing a registered sex offender who had volunteered for her mayoral campaign to be a building inspector." (Compl. ¶ 26.) The May 31, 2023, story did not mention Redmond by name or link to any of the earlier articles. (*See* Ex. A at 31.)

On January 5, 2024, Fox News published an extensive internet story on the continuing controversy surrounding Henyard. (Compl. ¶ 27.) Amid a detailed accounting of complaints

---

6 Available at https://www.fox32chicago.com/news/child-sex-offender-hired-by-dolton-mayor-faces-new-charges.

7 Available at https://www.fox32chicago.com/news/dolton-residents-call-on-mayor-to-resign-after-hiring-of-child-sex-offender.

8 Available at https://www.fox32chicago.com/news/majority-of-dolton-voters-favor-recalling-mayor-tiffany-henyard.

9 Available at https://www.fox32chicago.com/news/dolton-mayor-faces-scrutiny-over-questionable-use-of-public-funds-for-personal-charity.

against Henyard, the January 5, 2024, article described the 2022 recall effort against Henyard, explained that "Henyard hired a convicted sex offender as a code enforcement officer," and quoted and linked the first October 21, 2021, Fox 32 story. (*See* Ex. A at 44.[10])

On March 1, 2024, Redmond filed this lawsuit in Cook County Circuit Court alleging claims for defamation *per se*, false light, and defamation *per quod*, and claiming over $1 million in damages. On April 26, 2024, Defendants removed the case based on this court's diversity jurisdiction under 28 U.S.C. § 1332.

## ARGUMENT

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges whether the factual matter contained in the complaint is sufficient "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has that requisite plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Berger v. NCAA*, 843 F.3d 285, 290 (7th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). Neither will allegations that are speculative in nature. *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015). As shown below, Redmond's Complaint does not meet the necessary threshold to state claims for defamation or false light publication.

In evaluating the factual matter contained in the complaint, the Court may consider exhibits attached to the pleading. *See* *Venture Associates*, 987 F.2d at 431 ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Burlet*, 452 F. Supp. 3d

[10] Available at https://www.foxnews.com/media/democratic-mayor-accused-antics-wild-she-deserves-her-own-tv-show-real-life-parks-rec-situation.

at 812 (stating in a defamation case that "[t]o get the full context at the motion to dismiss stage, the Court 'must consider not only 'the complaint itself,' but also 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice'" (quoting *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013))).

**B. Redmond's claims against Fox 32 are barred by the one-year statute of limitations.**

Where a statute of limitations defense can be established based solely on the allegations in the complaint, the complaint must be dismissed under Rule 12(b)(6). *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Kiebala v. Boris*, No. 1:16 CV 7478, 2017 WL 590287, at *4 (N.D. Ill. Feb. 14, 2017). Moreover, threadbare allegations designed to defeat a statute of limitations defense, such as fraudulent concealment or republication, will not save a claim. *Logan*, 644 F.3d at 582–83 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).

The statute of limitations for defamation and false light claims in Illinois is one year. 735 ILCS 5/13-201; *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 459 (Ill. App. Ct. 1st Dist. 2010); *Ludlow v. Northwestern University*, 79 F. Supp. 3d 824, 841 (N.D. Ill. 2015). In defamation cases, the cause of action accrues, and the statute of limitation begins to run, on the date the allegedly defamatory statement is published, *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161 (Ill. 1975), and false light publicity claims accrue when the statements are made, *Ludlow*, 79 F. Supp. 3d at 841.

Moreover, Illinois follows the "single publication rule," which states that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance." 740 ILCS 165/1. "Pursuant to this rule, defamation and privacy actions are 'complete at the time of the

*first publication*, and any subsequent appearances or distributions of copies of the original publication are of no consequence to the creation or existence of a cause of action, but are only relevant in computing damages.'" *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1193 (Ill. App. Ct. 2d Dist. 2006) (quoting *Founding Church of Scientology of Washington, D.C. v. American Medical Ass'n*, 377 N.E.2d 158, 160 (Ill. App. Ct. 3d Dist. 1978)). Thus, "[t]he subsequent distribution of existing copies of an original publication neither creates a new cause of action nor tolls the applicable statute of limitations." *Id.*

*1. Redmond's claims against Fox 32 are barred because he filed the lawsuit more than one year after the first publication of the allegedly defamatory statements in October 2021.*

Redmond alleges that Defendants defamed him and placed him in a false light before the public by mislabeling Redmond's job title and stating "that Redmond was a 'dangerous' sex offender that was entering into Dolton residents' homes" and "that Redmond was entering homes in the Village of Dolton and posed a threat to residents." (Compl. ¶¶ 31, 33, *29.[11]) Because these statements were first published on October 21, 2021, Redmond's defamation and false light claims accrued on that date, and he had until October 21, 2022, to bring his defamation and false light claims. Likewise, any defamation or false light claims based on the publications on October 27, 2021, November 2, 2021, and June 29, 2022, had to be filed by October 27, 2022, November 2, 2022, and June 29, 2023, respectively. But because Redmond did not commence this lawsuit until March 1, 2024—over 28 months after the first publication—these claims are barred by the statute of limitations and must be dismissed with prejudice.

*2. Fox 32 did not "republish" the allegedly defamatory statements on or after March 1, 2023.*

Redmond also alleges that since the fall of 2022, Fox 32 has "repeatedly published stories referencing Redmond and/or included links to [its] earlier stories, which continue to

[11] The paragraph numbering in the Complaint repeats after paragraph 36, beginning again with paragraph 28 in Count III.

defame Redmond." (Compl. ¶ 25.) But Redmond's purported "republication" allegations do not save his claims against Fox 32, for three reasons.

First, the only alleged republication by Fox 32 that Redmond describes with any specificity is the May 31, 2023, written story. That story itself does not contain the allegedly defamatory statements, merely stating that "Henyard later made international news after hiring and then firing a registered sex offender who had volunteered for her mayoral campaign to be a building inspector." (Compl. ¶ 26.) This oblique reference to the original October 21, 2021, publication, without restating, quoting, or linking to the allegedly defamatory statements, simply does not constitute republication.[12] *See* *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012) ("[U]nder traditional principles of republication, a mere reference to an article, regardless how favorable it is as long as it does not restate the defamatory material, does not republish the material."). Accordingly, the May 31, 2023, story did not extend the deadline for Redmond to bring his claims against Fox 32.

Second, to the extent Redmond is claiming republication based on other, unspecified, hyperlinks in stories or elsewhere on Fox 32's websites, this Court has previously predicted that the "Illinois Supreme Court would find that a hyperlink does not qualify as a publication," explaining that a hyperlink "does not duplicate the content of a prior publication; rather, it identifies the location of an existing publication and, if selected, instructs a search engine to retrieve that publication." *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1137 (N.D. Ill. 2016). Courts in other jurisdictions have overwhelmingly agreed. *In re Phila. News.*, 690 F.3d at 175 ("If each link or technical change were an act of republication, the statute of limitations would be retriggered endlessly and its effectiveness essentially eliminated. A publisher would remain subject to suit for statements made many years prior, and ultimately could be sued repeatedly for a single tortious act the prohibition of which was the genesis of

[12] In any event, as discussed in Section C below, despite the alleged mislabeling of Redmond's position as a "building inspector" rather than a "code enforcement officer," the May 31, 2023, statement is not actionable because it is unquestionably "substantially true."

the single publication rule."); *Lokhova v. Halper*, 995 F.3d 134, 143 (4th Cir. 2021) ("The public policy supporting the single publication rule and the traditional principles of republication dictate that a mere hyperlink, without more, cannot constitute republication."); *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 507 (6th Cir. 2015) ("Simply alerting a new audience to the existence of a preexisting statement does not republish it.").[13] Thus, merely publishing other stories that referenced, summarized, or included hyperlinks to earlier stories does not constitute republication within the limitations period.

Finally, to the extent that Redmond is alleging that Fox 32 has continued to defame him simply by maintaining the original 2021 and 2022 stories on its website, the Seventh Circuit held in *Pippen v. NBCUniversal Media*, LLC, 734 F.3d 610, 615 (7th Cir. 2013), that passive maintenance of a website is not a "republication" for purposes of the single-publication rule. Thus, the mere fact that the original news stories and television broadcast have remained accessible from the Fox 32 website does not allow Redmond to bring his defamation or false light claims more than a year after the *first* publication.

Accordingly, because all Redmond's claims against Fox 32 are barred by the statute of limitations, the Complaint as to Fox 32 fails to state a claim upon which relief may be granted.

### C. Redmond's Complaint fails to state a claim for defamation or false light because the allegedly defamatory statements are substantially true.

Redmond's claims also fail in their entirety under the substantial truth doctrine because he does not and cannot plausibly allege that the "gist" of the statements is false, even taking all the allegations in the Complaint as true. "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Under Illinois

---

[13] *See also, e.g.*, *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 852 (N.D. Cal. 2020); *U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1074 (W.D. Wash. 2012); *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp. 2d 912, 918 (W.D. Ky. 2009); *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *7 (S.D. Cal. March 7, 2007).

law, "if the gist of a defamatory statement is true, if in other words the statement is substantially true, error in detail is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (string citation omitted). "The 'gist' or 'sting' of the alleged defamation means the heart of the matter in question—the hurtfulness of the utterance." *Vachet v. Cent. Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987). "When determining the 'gist' or 'sting' of allegedly defamatory material, a trial court must look at the highlight of the article, the pertinent angle of it, and not to items of secondary importance which are inoffensive details, immaterial to the truth of the defamatory statement." *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 986–87 (7th Cir. 2004) (citations omitted). In other words, "[a]ny inaccuracies which do no incremental damage to the plaintiff's reputation do not injure the only interest that the law of defamation protects." *Id*. Likewise, Illinois does not recognize a false light claim where a publication is substantially true. *Pope v. Chronicle Publ'g Co.*, 95 F.3d 607, 616 (7th Cir. 1996) (applying Illinois law and holding that where a publication was "substantially true" the plaintiff has not been "place[d] . . . in a false light to begin with").

Here, the "gist" or "sting" of the allegedly defamatory statements is undoubtedly substantially true, even if the Complaint were correct that some details of the statements regarding Redmond are inaccurate. All the news stories at issue—including the May 31, 2023, and January 5, 2024, stories (the only alleged statements made within a year of the Complaint's filing)—are based on the initial Fox 32 reporting in October and November 2021. Copies of those stories were included as attachments to Redmond's Complaint. *Burlet*, 452 F. Supp. 3d at 812 (stating in a defamation case that "[t]o get the full context at the motion to dismiss stage, the Court 'must consider not only 'the complaint itself,' but also 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice'" (quoting *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013))).

The "gist" of the original reporting may be succinctly and fairly stated as follows: Mayor Henyard hired Redmond in a position of authority as a code enforcement officer on the Village of Dolton payroll, without approval of the village board. In this position, Redmond wore a badge and frequently interacted with the public, including school children. (Ex. A at 19.) Controversy erupted and village residents felt upset and unsafe once it was discovered that Redmond was a registered sex offender who had "spent 24 years in prison in Illinois after pleading guilty to taking part in a brutal gang rape and beating" in which "[h]e and three others kidnapped and sexually assaulted two girls, age 13 and 14." (Ex. A at 12–13.)

Redmond claims that this reporting has damaged his reputation and caused him to lose his job with the village. Whether or not that is accurate, the problem for Redmond's Complaint is that he does not and cannot allege that any of those central facts are *false*. Quite the opposite: Redmond admits in his Complaint that he was "convicted for aggravated sexual assault [and] served 24 years in prison." (Compl. ¶ 23.). And such *true* statements cannot support Redmond's defamation or false light claims. *See* *Green*, 917 N.E.2d at 459.

Given the full context of Fox's reporting, it is not plausible that alleged inaccuracies regarding whether Redmond's specific job title was "code enforcement officer" or "building inspector," and what his particular responsibilities were as a code enforcement officer—*i.e.*, whether he had the authority to enter village homes and businesses—were in any way material to the overall truth of the reporting or caused any incremental damage to his reputation in the community. To put it bluntly: Redmond's reputation in his community has been damaged, if at all, by the truthful publication of the heinous crimes that Redmond pleaded guilty to committing in 1991, not any incidental inaccuracies regarding his responsibilities as a village officer thirty years later. And bringing to light the *truth*, no matter how purportedly damaging to the subject's reputation, cannot be defamatory: as the Seventh Circuit has observed, "[a] person does not have a legally protected right to a reputation based on the concealment of the truth." *Haynes*, 8 F.3d at 1228.

Other courts have rejected defamation claims based on substantial truth in very similar

circumstances. For example, in *Vachet*, the plaintiff, who had been arrested and charged with harboring a fugitive suspected of rape, asserted defamation claims against a newspaper based on inaccurate details in the newspaper story—including that there had been a warrant for his arrest and that he knew the whereabouts of the suspected rapist. 816 F.2d at 316. The Seventh Circuit held that the "gist" or "sting" of the article was that the plaintiff had been arrested for harboring a fugitive, and this was substantially true, notwithstanding minor inaccuracies. *Id.*; *see also* *Gist v. Macon Cnty. Sheriff's Dep't*, 671 N.E.2d 1154, 1157–58 (Ill. App. Ct. 1996) (holding that where "the essence of the matter is that plaintiff was wanted on an arrest warrant . . . for burglary to a motor vehicle," inaccuracies about whether the plaintiff "might possibly be armed" or "should be considered dangerous" or was a "most wanted" fugitive were immaterial details).

Because Redmond fails to allege that the "gist" of the statements attached to or referenced in the Complaint is false, the doctrine of substantial truth bars Redmond's claims for defamation and false light. Accordingly, Redmond's Complaint should be dismissed pursuant to Rule 12(b)(6). And because any attempt by Redmond to amend the Complaint would be futile in light of the affirmative allegations in the Complaint, the Court should dismiss Redmond's claims with prejudice.

### D. The allegedly defamatory statements are constitutionally privileged because Redmond was a public official and the Complaint fails to plausibly allege "actual malice."

As a code enforcement officer, Redmond was a public official. Thus, the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Pippen*, 734 F.3d at 614. Moreover, actual malice is an element of *all* false light claims, regardless of the public or private status of the plaintiff. *Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987, 991

(1989). And because the Complaint does not plausibly allege that the alleged defamatory statements were made with "actual malice," Redmond's claims are barred by the First Amendment and thus fail to state a claim upon which relief may be granted.

*1. Redmond was a public official as a code enforcement officer.*

Whether a plaintiff is a "public official" is a question of federal constitutional law for the Court to determine. *Rosenblatt v. Baer*, 383 U.S. 75, 84, 88 (1966); *Harris v. Quadracci*, 48 F.3d 247, 250 (7th Cir. 1995). As the Supreme Court explained in *Rosenblatt*, "the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Id.* at 85. Thus, "[w]here a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees," the person holding that position is a public official. *Id.*

Here, Redmond appears to recognize that he is a public official by pleading (albeit conclusorily) actual malice. And given a code enforcement officer's apparent degree of interaction with the public and role in policing municipal codes, which Redmond nowhere denies, it is clear that "the public has an independent interest in the qualifications and performance of the person who holds" the code enforcement officer position. *See id.* at 85. Indeed, the few courts that have confronted whether municipal building inspectors are "public officials" under *Rosenblatt* have answered in the affirmative. *See Vassallo v. Bell*, 534 A.2d 724, 733 (N.J. Super 1987); *Dattner v. Pokoik*, 437 N.Y.S.2d 425, 427 (N.Y. Sup. 1981). Moreover, given that Redmond apparently carried a badge as a code enforcement officer (a reported fact that he nowhere denies, *see* Ex. A at 19) and was responsible for investigating "potential violations of building and land codes" (Compl. ¶ 12), his role was analogous to that of rank-and-file police officers, who have consistently been held in this circuit and others to

be public officials for purposes of defamation law. *See* *Meiners v. Moriarty*, 563 F.2d 343, 352 (7th Cir. 1977) ("The public is certainly interested in an important and special way in the qualifications and performance of federal [law enforcement] agents . . . ."); *Young v. Gannett Satellite Info. Network, Inc.*, 734 F.3d 544, 553 (6th Cir. 2013) ("The overwhelming and entirely one-sided decisions by our sister circuits leave no doubt that police officers are public officials for defamation purposes."). Accordingly, this Court should recognize that Redmond was a public official as a code enforcement officer and thus must plausibly allege and prove actual malice.

*2. Redmond's conclusory allegations of actual malice do not state a claim upon which relief may be granted.*

"States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible." *Pippen*, 734 F.3d at 614 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts have overwhelmingly held that "the bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss." *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 742 (N.D. Ill. 2020); *see also* *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 58 (1st Cir. 2012); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, 674 F.3d 369, 373 (4th Cir. 2012); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 691–92 (11th Cir. 2016). Moreover, an alleged failure to investigate or failure to retract statements after correction are not enough to allege a plausible claim of "actual malice." *Pippen*, 734 F.3d. at 614; *Michel*, 816 F.3d at 692.

Here, Redmond provides only a conclusory allegation that the defendants made the allegedly defamatory publications "intentionally, with actual malice, and knowing the statements were false or in reckless disregard for the truth." This is patently insufficient to state a plausible claim for actual malice. *Pippen*, 734 F.3d at 614. Without any objective facts that would suggest that the defendants knew that Redmond did not have the authority to enter

homes or recklessly disregarded the truth, or that the defendants were aware of any (alleged) material difference between a "code enforcement officer" or a "building inspector," Redmond's Complaint does not state a claim upon which relief may be granted.

## CONCLUSION

Redmond has failed to state a claim upon which relief may be granted, and his Complaint must be dismissed. His claims are time-barred as to Fox 32 because the allegedly defamatory statements by Fox 32 were first published more than one year before he commenced this suit. Moreover, all the statements at issue in the Complaint are not defamatory and did not place Redmond in a false light before the public because, as alleged in the Complaint, the "gist" of the statements is indisputably true, even if taking as true Redmond's allegations that certain immaterial details were inaccurate. Finally, even if Redmond had otherwise stated timely claims of substantially false statements, his conclusory allegations of actual malice are insufficient to plausibly state a claim for false light or for defamation by a public official under *New York Times v. Sullivan*. Accordingly, Defendants Fox Television Stations, LLC, and Fox Corporation respectfully request that this Court grant their motion and dismiss Plaintiff's Complaint with prejudice.

Dated: May 3, 2024

Respectfully submitted,

/s/ Jesse M. Barrett
Jesse M. Barrett
SouthBank Legal
700 12th Street, NW Suite 700
Washington, DC 20005
(202) 904-2410 (telephone)
(202) 697-5053 (facsimile)
jbarrett@southbank.legal

Stephen M. Judge
Patrick J. O'Rear
SouthBank Legal
100 East Wayne Street, Suite 300
South Bend, Indiana 46601
(574) 968-0760 (telephone)
(574) 968-0761 (facsimile)
sjudge@southbank.legal
porear@southbank.legal

*Attorneys for Defendants Fox Television Stations, LLC, and Fox Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2024, service of a true and complete copy of the attached and foregoing document was filed and served on all counsel of record using CM/ECF. Service of a true and complete copy of the attached and foregoing document was also made by mail and e-mail on the following:

CUSTARDO LAW, LLC
Matthew R. Custardo
650 Warrenville Road, Suite 1000
Lisle, IL 60532
matthew@custardolaw.com

/s/ Jesse M. Barrett